UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **David Perdue; and Perdue for Governor, Inc.,** <br><br> Plaintiffs, <br><br> v. <br><br> **Brian Kemp,** in his official capacity as the Governor of Georgia; **Christopher M. Carr,** in his official capacity as the Attorney General of Georgia; **James D. Kreyenbuhl,** in his official capacity as Chairman of the Georgia Government Transparency and Campaign Finance Commission; **Eric L. Barnum,** in his official capacity as Vice Chair of the Georgia Government Transparency and Campaign Finance Commission; **Robert A. Watts,** in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; **Darryl Hicks,** in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; **Rick Thompson,** in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission, <br><br> Defendants. | Case No. 1:22-cv-00053-MHC <br><br> **DECLARATORY AND INJUNCTIVE RELIEF SOUGHT** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR A PRELIMINARY INJUNCTION**

-i-

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

INTRODUCTION .........................................................................................................1

ARGUMENT .................................................................................................................2

    I.    Defendants' Threshold Objections Are Without Merit.........................2

        A.    Senator Perdue Has Standing. ......................................................2

        B.    Senator Perdue Has Joined All Necessary Parties. ......................4

    II.    Defendants Fail To Rebut Senator Perdue's Showing That His First Amendment Claim Will Succeed On The Merits. .........................5

        A.    Senator Perdue Has Established A Substantial Burden. ..............5

        B.    Defendants Fail To Advance Any Compelling Interest. .............6

        C.    Defendants Confirm The Amendment Is Untailored ..................9

    III.    Defendants Fail To Rebut Senator Perdue's Showing That His Equal Protection Claim Will Succeed On The Merits. ........................11

    IV.    Defendants Fail To Rebut Senator Perdue's Showing Of Immediate And Irreparable Harm. ......................................................13

    V.    Defendants Fail To Rebut Senator Perdue's Showing That The Equitable Factors Favor Relief. ..........................................................14

CONCLUSION ...........................................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION

Defendants do not dispute that they ask this Court to do what the Supreme Court has "never" done: "uph[o]ld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis v. FEC*, 554 U.S. 724, 738 (2008).  Nor do they dispute that Governor Kemp's leadership committee has used the Amendment's unequal limits to raise and spend hundreds of thousands of dollars attacking Senator Perdue.  And Defendants are unable to show that the Amendment is closely drawn to their asserted interest in "transparency," or to proffer any evidence that the Amendment supports an interest in combatting quid pro quo corruption or its appearance.

The obvious solution is to enjoin the Amendment and return to the status quo. Hoping to avoid that result, Defendants meritlessly contest this Court's jurisdiction, ignoring Senator Perdue's First Amendment injuries and arguing that the attack ads paid for by Governor Kemp's leadership committee are non-injurious.  On the merits, Defendants contend—without citation to any authority—that the Amendment's unequal contribution limits cannot burden Senator Perdue's First Amendment rights.  But *Davis* specifically says otherwise, which is consistent with common sense and the general First Amendment precept that governments may not favor one speaker over another through the unequal provision of financial benefits.

-1-

Defendants also introduce a red herring. They repeatedly assert—without a scintilla of support in the legislative record or otherwise—that the true purpose of the Amendment is to permit Governor Kemp to avoid a Georgia campaign-fundraising *timing* restriction that has nothing to do with *contribution limits* and which the Attorney General has previously defended as an important weapon against "bribery." *Teper v. Miller*, 82 F.3d 989, 994 (11th Cir. 1996). But it blinks reality to contend, as Defendants do here, that an end run on a longstanding anticorruption statute furthers some anticorruption interest. Furthermore, if the campaign-fundraising timing restriction were unfair, then the obvious, tailored solution would be to eliminate the restriction or to extend it to challengers. *See Davis*, 554 U.S. at 743. There would be no need to alter the contribution limits, let alone to raise them unequally to the benefit of incumbents. The Amendment has nothing to do with the timing restriction, and the restriction has no bearing on the Amendment's unconstitutionality.

## ARGUMENT

**I.   DEFENDANTS' THRESHOLD OBJECTIONS ARE WITHOUT MERIT.**

    **A.   Senator Perdue Has Standing.**

Senator Perdue has standing because the Amendment injures his First Amendment and equal protection rights. As he alleged, the Amendment harms

Senator Perdue by authorizing only Governor Kemp to accept unlimited contributions to a "leadership committee" and to use those funds to further his gubernatorial primary campaign, putting Senator Perdue at a competitive disadvantage. Compl. ¶¶ 28–32; Mot. 8–20. Defendants' argument that this is somehow insufficient fails because "the [Supreme] Court has squarely held that a plaintiff who suffers unequal treatment has standing to challenge a discriminatory exception that favors others." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (plurality opinion) (collecting cases); *see also Davis*, 554 U.S. at 734 (holding candidate "has standing" to challenge statute "allowing his opponent to receive contributions on more favorable terms").

Contrary to Defendants' contentions, Senator Perdue's injury "is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Defendants concede, as they must, that Governor Kemp "is running" campaign advertisements attacking Senator Perdue using leadership committee funds that, under the Amendment, are subject to "no limit for contributions," Opp'n 5, 8, and further that the Amendment bars Senator Perdue, as Governor Kemp's primary challenger, from establishing a leadership committee or accepting unlimited contributions to his campaign, Opp'n 3–4. These harms are already happening, so Defendants are simply wrong to

characterize Senator Perdue's injury as "speculative." Opp'n 8–10.

Defendants are equally mistaken in denying "a 'causal connection' between" "the existence of Governor Kemp's leadership committee and the existence of advertisements" attacking Senator Perdue. Opp'n 9–10. Far from unconnected, there is no dispute that the "videos, emails, and websites" to which Senator Perdue objects each clearly state that they "are 'paid for by Georgians First Leadership Committee,'" Compl. ¶¶ 22–23—that is, by Governor Kemp's leadership committee.[1] Because Governor Kemp's leadership committee was established pursuant to the Amendment, Senator Perdue's injuries are "fairly traceable" to the Amendment and are "likely to be redressed by a favorable judicial decision." *See Spokeo*, 578 U.S. at 338. Senator Perdue has standing.

### B. Senator Perdue Has Joined All Necessary Parties.

Defendants mistakenly contend (at Opp'n 11) that this Court cannot afford "complete relief" unless Georgians First Leadership Committee is made a party to this action. But that overlooks the commonplace that when a court holds a statute unlawful, nonparties who had benefitted must change their behavior to accord with the court's ruling. That includes "many cases where a court cures unequal treatment

---

[1] Indeed, Defendants themselves inadvertently confirm causation when they argue—wrongly—that Senator Perdue should have brought this case "six months ago" when "the [Amendment] was passed." Opp'n 21.

by . . . nullifying a benefit" that had been relied upon by "strangers to th[e] suit." *Political Consultants*, 140 S. Ct. at 2356 (quotation marks omitted).

In any event, the distinction between Defendants and Georgians First Leadership Committee is illusory because, pursuant to the Amendment, the Committee is "chaired by the Governor." O.C.G.A. § 21-5-34.2(a). Governor Kemp *is* a party to this litigation so, if the Court holds the Amendment unlawful, the Court can enjoin the Committee's unlawful actions and order it to take action through its chair, Governor Kemp. *See, e.g.*, *FTC v. Leshin*, 618 F.3d 1221, 1235 (11th Cir. 2010) ("The injunction not only binds the parties 'but also those identified with them in interest'"). Defendants' objection is meritless.

## II. DEFENDANTS FAIL TO REBUT SENATOR PERDUE'S SHOWING THAT HIS FIRST AMENDMENT CLAIM WILL SUCCEED ON THE MERITS.

### A. Senator Perdue Has Established A Substantial Burden.

Senator Perdue will succeed on the merits of his First Amendment claim because the Amendment exempts Governor Kemp from the contribution limits that apply to gubernatorial campaign challengers. As Senator Perdue explained (at Mot. 8–18), these "asymmetrical limits" produce a substantial "drag on [his] First Amendment rights," *Davis*, 554 U.S. at 739–41.

Defendants' denial of the First Amendment burden rests on their mistaken contention that there can be no First Amendment harm unless speech or association

is affirmatively prohibited.  Opp'n 12–13.  But that cramped understanding is unsupported by any citation to authority and overlooks the fundamental First Amendment precept that "government regulation may not favor one speaker over another" either through restrictions or the provision of "financial benefits," *Rosenberger v. Rector and Visitors of U. of Va.*, 515 U.S. 819, 828, 834 (1995), including "fundraising advantages for opponents in the competitive context of electoral politics," *Davis*, 554 U.S. at 739.

Indeed, Defendants' silence with respect to *Davis* is particularly deafening.  As Senator Perdue explained, the Supreme Court there found "a substantial burden on the exercise of . . . First Amendment right[s]" where, just like here, the challenged statute imposed "different contribution limits for candidates who [were] competing against each other" in "the same election."  554 U.S. at 738–40, 745.  Defendants' refusal to engage this on-point holding of the Supreme Court underscores the severity of Senator Perdue's First Amendment burden.

### B. Defendants Fail To Advance Any Compelling Interest.

Defendants claim the Amendment serves anticorruption interests by advancing "transparency."  Opp'n 14–16.  Proffering no evidence,[2] Defendants

---

[2] In support of a supposed interest in "transparency," Defendants offer a stray remark by a single legislator.  His conclusory assertion is unsupported by evidence

assert that the Amendment reduces quid pro quo corruption or its appearance by "encouraging donors to contribute to more transparent" leadership committees instead of "outside organizations" that supposedly are "designed to avoid triggering even barebones disclosure obligations" and with which candidates supposedly coordinate unlawfully.  Opp'n 15.

The problem with Defendants' argument is that it is self-evidently post-hoc and pretextual.  If the desire was to increase transparency for unregulated electoral spending from outside organizations, the Amendment could have required disclosure for such communications.  *Cf. Citizens United v. FEC*, 558 U.S. 310, 366–71 (2010) (upholding disclosure requirements for independent expenditures).  Instead, the Amendment creates an entirely new class of "leadership committees" that may accept ***unlimited*** contributions and make ***coordinated*** expenditures that ***expressly advocate*** for or against particular candidates subject only to existing disclosure requirements,[3] and attaches no disclosure obligations to unregulated electoral spending by "outside organizations."  Thus, the only effect of the Amendment is to eliminate the contribution limits for ***coordinated***, ***express-***

---

of corruption, making it a far cry from the extensive legislative records that courts have found necessary to justify campaign finance regulations.  *See* Mot. 15–16.

[3]  As Senator Perdue explained, the Amendment merely incorporates by reference the disclosure obligations that already apply to campaign committees.  Mot. 16.

*advocacy* expenditures which were already subject to disclosure. Donors contributing to outside organizations engaging in unregulated electoral spending may still do so in secret, undermining any credible claim to "transparency."

Defendants' assertion of an anticorruption interest is further undermined by their claim that the Amendment is designed to enable "Governor Kemp" to fundraise during "the legislative session." Opp'n 15. Under Georgia law, certain state officials—including Governor Kemp—are prohibited from accepting campaign contributions "during a legislative session." O.C.G.A. § 21-5-35(a). The restriction does not alter the otherwise applicable contribution limits and is designed "to prevent the appearance of impropriety—bribery, to be precise—that may arise when state [officials] accept campaign contributions during the period of time when they are actually legislating." *Teper*, 82 F.3d at 994–95 (citation omitted); *see also N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 715 (4th Cir. 1999) ("Prohibiting lobbyist contributions and solicitations while the General Assembly is in session serves to prevent corruption and the appearance of corruption."). Defendants' argument that the Amendment works around an anticorruption statute thus undermines their assertion that the Amendment is itself an anticorruption measure.

### C. **Defendants Confirm The Amendment Is Untailored.**

Even if Defendants could justify their supposed "transparency" interest, the Amendment "is poorly tailored." *McCutcheon v. FEC*, 572 U.S. 185, 218 (2014) (plurality opinion). "In the First Amendment context, fit matters." *Ibid.* And Defendants' rationale for the Amendment "fits about as well as a pair of pandemic sweatpants." *Ted Cruz for Sen. v. FEC*, No. 19-CV-908, 2021 WL 2269415, at *10 (D.D.C. June 3, 2021) (appeal docketed, 142 S. Ct. 55).[4]

As Senator Perdue explained, the Amendment is wildly underinclusive because it targets the removal of contribution limits for those candidates—incumbents—with the greatest risk of corruption. Mot. 17–18. Defendants attempt to spin underinclusivity as a benefit, asserting—again, without any support in the legislative record—that "a small number of groups" is "more easily observed" by regulators. Opp'n 16. "But 'the prime objective of the First Amendment is not efficiency.'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021). And "[m]ere administrative convenience does not remotely 'reflect the seriousness

---

[4] Defendants' disagreement about tailoring (at Opp'n 13) is thus misplaced. "Even when the Court is not applying strict scrutiny, [it] still require[s] 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but a means narrowly tailored to achieve the desired objective.'" *McCutcheon*, 572 U.S. at 218 (cleaned up).

of the actual burden'" that the Amendment imposes on Senator Perdue's speech and associational rights. *Ibid.*

Defendants are equally misguided in claiming the Amendment "merely offsets" Georgia's freeze on contributions during the legislative session. Opp'n 16–17. That provision is a campaign-fundraising *timing* restriction only and does not alter the applicable *contribution limits*. *See Teper*, 82 F.3d at 994–95. Thus, Defendants are simply wrong when they assert that the timing restriction "raises more serious First Amendment questions" than the Amendment. Furthermore, the Amendment is not tailored. If the General Assembly believed "the normally applicable [contribution] limits" were "distorting the electoral process" and "not needed in order to combat corruption, then the obvious remedy [would be] to raise or eliminate those limits." *Davis*, 554 U.S. at 743; *see also Riddle v. Hickenlooper*, 742 F.3d 922, 932 (10th Cir. 2014) (Gorsuch, J., concurring) ("[C]an a state really justify unequal treatment because of a 'problem' of its own creation?"). And there would be no need to allow favored candidates to accept unlimited contributions.

Defendants are similarly mistaken in attempting to argue "fit" from the observation that "Governor Kemp's leadership committee" may, in addition to supporting Governor Kemp, "support other candidates for office." *See* Opp'n 16. According to Defendants, support for other candidates "facilitates separation

between the donor and the ultimate beneficiary of the funds." *Ibid.* Whatever the merits of that argument with respect to the support Governor Kemp may offer other candidates, Defendants do not deny that Governor Kemp is using his committee to attack Senator Perdue. And because self-promotion is a problem with any candidate leadership committee, the Amendment "may be invalidated" on its face "as overbroad [in] a substantial number of its applications." *Bonta*, 141 S. Ct. at 2387.

### III. DEFENDANTS FAIL TO REBUT SENATOR PERDUE'S SHOWING THAT HIS EQUAL PROTECTION CLAIM WILL SUCCEED ON THE MERITS.

In his Motion, Senator Perdue explained that the harms caused by the Amendment's unequal treatment of candidates are also cognizable under the Fourteenth Amendment guarantee of equal protection. Mot. 18–20. Defendants disagree but cannot justify the manifest disparities created by the Amendment.

Defendants first attempt to distinguish *Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), as "a contribution limit case," arguing the Amendment "does not impose any contribution limits." Opp'n 17. But that is a distinction without a difference because the Amendment was passed "[t]o amend" the Georgia statute ***that contains the State's contribution limits***. S.B. 221, 2021 Ga. Laws 221 § 1. Thus, the Amendment must be construed as part of "the entire text," *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192–93 (11th Cir. 2019) (applying "whole-text canon" to amended statute); *see FDA v. Brown & Williamson Tobacco Corp.*, 529

-11-

U.S. 120, 133 (2000) (explaining, in the context of a frequently amended regulatory statute, that the court must "fit, if possible, all parts into an harmonious whole"), and, in any event, the issue is unequal treatment, not limits *per se*.

Nor are Defendants correct to suggest that equal protection applies only to "contributors, not a candidate." Opp'n 17. In *Davis*, the Supreme Court vindicated a candidate's disparate treatment claim "on the First Amendment rather than on the right to equal protection." *Riddle*, 742 F.3d at 929 (citing *Davis*, 554 U.S. at 744 n.9). But the Court never disparaged Davis's equal protection claim and has elsewhere noted significant overlap between speech and equal protection. *See Political Consultants*, 140 S. Ct. at 2354 ("The 'First Amendment is a kind of Equal Protection Clause for ideas.'"); *Buckley v. Valeo*, 424 U.S. 1, 30–35 (1976) (finding no "discrimination" where "the Act on its face treats all candidates equally with regard to contribution limitations").

Finally, Defendants are mistaken in asserting that the campaign-fundraising timing restriction means that "[Senator] Perdue is [not] similarly situated to Governor Kemp." Opp'n 17–18. Defendants cite no authority for their position and, as explained above, the timing restriction does not alter the applicable contribution limits. Governor Kemp and Senator Perdue are similarly situated in the only respect the matters—they are "candidates vying for the same office." *Riddle*, 742 F.3d at

929; *see Davis*, 554 U.S. at 728, 738. The basic favoritism imposed by the Amendment violates both the First Amendment and equal protection.

## IV. DEFENDANTS FAIL TO REBUT SENATOR PERDUE'S SHOWING OF IMMEDIATE AND IRREPARABLE HARM.

Defendants concede that a First Amendment violation "unquestionably" constitutes irreparable harm. Opp'n 19; *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Defendants' position on irreparable harm thus largely consists of rearguing their mistaken view of the merits, Opp'n 18–20, and fails for the same reasons.

When Defendants do address the harms cause by the Amendment, they try to mitigate the damage by suggesting that Senator Perdue's constitutional rights are less valuable because "[h]e was a U.S. Senator for six years" and is "endors[ed] [by] Donald Trump." Opp'n 20. But those observations are of no consequence. "The First Amendment protects more than just the individual on a soapbox and the lonely pamphleteer." *Citizens United*, 558 U.S. at 373 (Roberts, C.J., concurring); *see Campbell v. Reisch*, 986 F.3d 822, 827 (8th Cir. 2021) (vindicating state representative's "own First Amendment right to craft her campaign materials"). The First Amendment protects Senator Perdue just like it protects everyone else.

Nor is there any merit to Defendants' contention that Senator Perdue

-13-

"delay[ed] in bringing this action." Opp'n 20–23. Contrary to Defendants' suggestion, Senator Perdue could not have brought litigation as a non-candidate without "a personal, distinct injury." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). Nor could Senator Perdue have known that Governor Kemp planned to use his unlawful leadership committee to launch a coordinated, multichannel attack on Senator Perdue over the holidays.[5] That Senator Perdue brought this action soon after those attacks began shows that he "did not unreasonably delay." *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1296 (N.D. Ga. 2018) (collecting cases where courts rejected then-Secretary Kemp's meritless assertions of delay).

## V. DEFENDANTS FAIL TO REBUT SENATOR PERDUE'S SHOWING THAT THE EQUITABLE FACTORS FAVOR RELIEF.

Senator Perdue has explained that the balance of equities and the public interest favor relief. Mot. 22–24. Defendants respond that an injunction would harm Governor Kemp by leaving him "with only a traditional campaign account" that cannot raise funds during the legislative session. Opp'n 23–24. But again, many

---

[5] Despite Defendants' "transparency" rhetoric, Governor Kemp's leadership committee has not yet disclosed its expenditures or contributions. Thus, Senator Perdue could not have known the committee would attack him until it did so. And because the campaign-fundraising timing restriction has nothing to do with the Amendment, there is no merit to Defendants' suggestion that Senator Perdue waited until the legislative session was about to begin to prosecute this action.

states use campaign-fundraising timing restrictions to fight corruption, *see* Nat'l Conf. State Legis., *States that Prohibit Campaign Contributions During Legislative Sessions* (2006) ("28 states place restrictions on giving and receiving campaign contributions during the legislative session"), and the Attorney General has said Georgia's restriction combats "bribery," Op. Att'y Gen. U95–27, https://law.georgia.gov/opinions/95-27-0.  There is no harm in requiring Governor Kemp to abide by a regulation that has been in place ***since 1986***.

Nor is there any merit to Defendants' contention that an "injunction would harm the speech of those donors" who contributed to Governor Kemp's leadership committee.  Opp'n 24.  As Defendants acknowledge (at Opp'n 11), Senator Perdue has requested that the Court order Governor Kemp "to 'refund all contributions'" to his leadership committee.  Nothing would prevent refunded donors from using their contributions to support Governor Kemp through independent expenditures.  They would still be free to engage in unlimited speech; they simply would be unable to engage in unlimited speech that is coordinated with or directed by the Governor's campaign.  Defendants' suggested harm is a mirage.

## CONCLUSION

For the foregoing reasons, and those stated in the Motion, the Court should grant the Motion and grant the relief requested in the Complaint.

<div style="float:right">

Respectfully submitted,

</div>

January 24, 2022

WILEY REIN LLP
Michael E. Toner
(*pro hac vice* pending)
Brandis L. Zehr
(*pro hac vice* pending)
Stephen J. Obermeier
(*pro hac vice* pending)
Jeremy J. Broggi
(*pro hac vice* pending)
Krystal B. Swendsboe
(*pro hac vice* pending)
2050 M Street, NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049

By: /s/ Douglas Chalmers, Jr.
CHALMERS & ADAMS LLC
Douglas Chalmers, Jr. (GA Bar #118742)
Heather Wagner (GA Bar # 962353)
5805 State Bridge Road #G77
Johns Creek, GA 30097
Phone: (770) 630-5927
Fax: (866) 716-6089

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Plaintiffs' Reply in Support of Their Motion for a Preliminary Injunction has been prepared in accordance with the font type and margin requirements of N.D. Ga. L.R. 5.1, using font type of Times New Roman and a point size of 14.

January 24, 2022

By: /s/ Douglas Chalmers, Jr.
CHALMERS & ADAMS LLC
Douglas Chalmers, Jr. (GA Bar #118742)
Heather Wagner (GA Bar # 962353)
5805 State Bridge Road #G77
Johns Creek, GA 30097
Phone: (770) 630-5927
Fax: (866) 716-6089

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2022, I electronically filed the forgoing Plaintiffs' Reply in Support of Their Motion for a Preliminary Injunction with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

H. Christopher Bartolomucci,
Annika M. Boone,
Brian Field,
Erik Scott Jaffe,
Loree Anne Paradise,
Gene C. Schaerr,
Jason Brett Torchinsky, and
Elizabeth Marie Wilson Vaughan

/s/ Douglas Chalmers, Jr.
Douglas Chalmers, Jr.
Georgia Bar No. 18742
Heather Wagner
Georgia Bar No. 96235
Attorneys for David Perdue and Perdue for Governor, Inc.

CHALMERS & ADAMS LLC
5805 State Bridge Road #G77
Johns Creek, GA 30097
Phone: (770) 630-5927
Fax: (866) 716-6089
Email: dchalmers@chalmersadams.com