IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID PERDUE, and<br>PERDUE FOR GOVERNOR, INC.,<br><br><br>*Plaintiffs*,<br><br><br>v.<br><br><br>BRIAN KEMP, in his official capacity as<br>Governor of Georgia, *et al.*,<br><br><br>*Defendants*. | CIVIL ACTION NO.<br>1:22-CV-53-MHC |

BRIEF OF *AMICUS CURIAE*
GEORGIANS FIRST LEADERSHIP COMMITTEE
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF *AMICUS* INTERESTS ............................................1

STATEMENT OF FACTS AND STATUTORY BACKGROUND ................................................3

    I.    Georgia's Campaign Finance Framework.......................................................3

    II.   Georgia Creates a New Type of Entity: the Leadership Committee ...........5

    III.  Georgians First Leadership Committee ......................................................6

    IV.  Perdue's Lawsuit .........................................................................................7

ARGUMENT AND CITATION TO AUTHORITY ...............................................................8

    I.    *Davis* is inapposite.......................................................................................9

    II.   The balance of the equities and the public interest do not clearly favor Plaintiffs. .................................................................................................11

    III.  Plaintiffs' preferred remedy is inappropriate and overbroad. ....................14

CONCLUSION..............................................................................................................16

## INTRODUCTION AND STATEMENT OF *AMICUS* INTERESTS

Georgians First Leadership Committee, Inc. ("Georgians First") files this brief as *amicus curiae* in opposition to Plaintiffs David Perdue and Perdue for Governor, Inc.'s motion for preliminary injunction.

Georgians First has a profound interest in the outcome of this case. Plaintiffs ask this Court to re-write Georgia law and create a new campaign finance scheme with the specific purpose of curtailing the speech of Georgians First—a separate and independent entity from the Governor or his reelection campaign. Plaintiffs ask this Court to enter a mandatory injunction to stop all activity of any gubernatorial leadership committee created under O.C.G.A. § 21-5-34.2 including Georgians First, force the Commission to revoke Georgians First's leadership committee registration, prohibit future expenditures by Georgians First, and order Georgians First to refund all contributions, which includes contributions already lawfully spent and contributions that would otherwise go toward planned expenditures. *See* Doc. 2-1.

But despite his soaring rhetoric about violations of constitutional rights, Mr. Perdue's lawsuit is fundamentally an attempt to muzzle the leading candidate's supporters just as Governor Kemp is prohibited from raising money for himself during the legislative session. This is nothing more than rank, political opportunism.

The reality is that there is no First Amendment or Equal Protection violation

here. Perdue for Governor is subject to the same contribution limits as all other gubernatorial campaigns, including Governor Kemp's campaign committee—Kemp for Governor, Inc. And like Governor Kemp, Mr. Perdue is not restricted from spending any amount of money on his campaign, including from Mr. Perdue's large personal fortune or his stock trades while in Congress.[1] Mr. Perdue is also fully capable of coordinating with any leadership committee to raise and spend unlimited amounts of money to support his campaign. The fact that he has been unable to convince a single leadership committee to support his campaign—and is resorting to illegally coordinating with an independent committee instead[2]—is no reason to invalidate a duly enacted law, forcibly divest a lawfully registered entity from its lawfully acquired funds, and prohibit all of its First Amendment protected activities.

In short, Plaintiffs have failed to demonstrate any restraint on their speech or that they will suffer irreparable harm absent an injunction. Indeed, Plaintiffs seek to

---

[1] *See* Stephanie Saul, Kate Kelly and Michael LaForgia, *2,596 Trades in One Term: Inside Senator Perdue's Stock Portfolio*, N.Y. TIMES (Dec. 9, 2020), https://www.nytimes.com/2020/12/02/us/politics/david-perdue-stock-trades.html ("Mr. Perdue purchased up to $260,000 worth of Pfizer stock between Feb. 26 and Feb. 28, in the early days of a market downturn. On the 28th, he issued a news release reporting that he had regularly attended briefings led by the coronavirus task force; records subsequently showed that he had bought the third tranche of Pfizer shares that same day.").

[2] *See* Georgia Values Fund's fundraising webpage, https://secure.winred.com/georgia-values-fund/save-georgia?sc=winred-directory&money_bomb=false&recurring=false (last accessed January 27, 2022).

use this Court to improperly restrain a supporter of Mr. Perdue's political opponent. This Court should decline Plaintiffs' invitation.

## STATEMENT OF FACTS AND STATUTORY BACKGROUND

### I.   Georgia's Campaign Finance Framework

Georgia has a detailed and highly regulated framework for regulating fundraising and expenditures in connection with political campaigns. Among other things, Georgia law distinguishes between three different types of entities that may raise and spend money in support of a particular candidate's campaign that are relevant here: (1) campaign committees, (2) independent committees, and (3) political action committees (or "PACs"). O.C.G.A. § 21-5-3. A campaign committee is an entity which accepts and spends funds designed to bring about the nomination or election of the campaign committee's candidate. *Id.* An independent committee is an entity, other than a campaign committee, political party, or political action committee, which receives donations and makes independent expenditures either for the purpose of affecting the outcome of an election or to advocate the election or defeat of any particular candidate (*i.e.*, by running its own advertisements), but does not make contributions to candidates. *Id.* And a PAC is an entity which receives donations and then contributes funds to one or more candidates or campaign committees of candidates for public office. *Id.*

Georgia law also imposes certain disclosure requirements and restrictions on fundraising and expenditures related to political campaigns. In particular, Georgia law imposes limits on contributions to state-wide candidates for primary, general, and runoff elections. *Id.* § 21-5-41(a).[3] This effectively means that campaign committees are restricted in their fundraising, while PACs are restricted (to a degree) in their expenditures. Meanwhile, the contribution limits do not affect independent committees, but independent committees and PACs are, however, barred from coordinating their expenditures with campaign committees. *See Id.* § 21-5-34(f); *see also* Ga. Comp. Rules & Reg. 189-2-.01(14), 189-3-.01(9)(f). Additionally, the campaign committees of current officeholders—but not their opponents—are prohibited from raising funds while the Legislature is in session, which usually means from January through March. O.C.G.A. § 21-5-35. This means that during an election year, incumbents are prohibited from fundraising for three out of the final six months before the primary election.[4]

---

[3] The current contribution limits for statewide candidates are: $7,600 for the 2022 Primary Election, $7,600 for the 2022 General Election, and $4,500 for the potential Primary and General Runoff Election for a total of $24,200. *See* Campaign Contribution Limits, https://ethics.ga.gov/contribution-limits (last accessed on Jan. 27, 2022).

[4] *See* Ga. Sec. of State, 2022 State Elections & Voter Registration Calendar, https://sos.ga.gov/admin/uploads/2022_State_Short_Calendar10.pdf (last accessed on Jan. 26, 2022) (setting primary elections for May 24, 2022).

Despite their restriction on First Amendment-protected political speech, the Supreme Court and other courts around the country have upheld such regulations when they serve the important governmental interest of "protect[ing] against corruption *or* the appearance of corruption." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014).

## II.    Georgia Creates a New Type of Entity: the Leadership Committee

Last year, Georgia added a fourth type of committee to this list: the leadership committee. The Georgia General Assembly authorized leadership committees under Senate Bill 221 (2021), which was signed into law on May 4, 2021, and codified at O.C.G.A. § 21-5-34.2. A leadership committee can accept contributions and make expenditures for the purpose of affecting the outcome of *any* election and advocating for the election or defeat of *any* candidate. O.C.G.A. § 21-5-34.2(d). In this regard, a leadership committee is similar to an independent committee. Leadership committees can also accept contributions and make expenditures to defray expenses incurred in connection with *any* candidate's campaign for elective office and a public officer's fulfillment or retention of such office, similar to a PAC. O.C.G.A. § 21-5-34.2(d). Thus, a leadership committee can raise and spend funds to support *multiple* candidates, in contrast to a campaign committee. This distinction is lost on Plaintiffs.

Despite  similarities  to  political  action  committees  and  independent

committees, leadership committees are subject to increased regulatory oversight compared to those entities. A leadership committee must register and file disclosure reports with the Commission once it either accepts contributions or makes expenditures in excess of $500.00. O.C.G.A. § 21-5-34.2(e). By contrast, a political action committee is exempt from registration and reporting requirements if it makes "aggregate contributions or expenditures to or on behalf of candidates of $25,000.00 or less in one calendar year." O.C.G.A. § 21-5-34(e). Leadership committees are also required to file disclosure reports in election and non-election years on the same schedule applied to campaign committees. O.C.G.A. § 21-5-34.2(e). But independent committees, which can also raise and spend unlimited amounts, are not required to make the same quarterly and non-election year filings required for leadership committees. *See* O.C.G.A. § 21-5-34(f).

## III.   Georgians First Leadership Committee

In light of this new law, Georgians First Leadership Committee was formed on June 25, 2021. Georgians First is an independent corporation separately registered with the Georgia Secretary of State's Office. While Governor Kemp is its Chairman, it has a Board of Directors and an Executive Director. In addition to spending funds in support of Governor Kemp's reelection, Georgians First has plans to spend money in support of other candidates as well. Indeed, Georgians First has already incurred

numerous contractual commitments through the rest of this election cycle. And although Georgians First is not subject to contribution limits, approximately 75% of the donations to Georgians First have been under the primary election contribution limit of $7,600.

## IV.   Perdue's Lawsuit

On January 6, 2022, just four days before the legislative session was poised to start and his political opponent would be prohibited from fundraising, Mr. Perdue and his campaign committee filed this lawsuit. Mr. Perdue complains that S.B. 221 sets him on unequal footing with Governor Kemp in his reelection. Specifically, Mr. Perdue alleges that he is bound by the contribution limits in the Ethics in Government Act and "must respond to Governor Kemp's attacks within the confines of Georgia's traditional campaign finance regime," whereas Governor Kemp is not so bound. Doc. 1, ¶ 9. But this is simply not true. Governor Kemp and Mr. Perdue are both bound by the same campaign contribution limits. Both Governor Kemp and Mr. Perdue are able to coordinate with any leadership committee they wish to supplement their own campaign expenditures. Mr. Perdue simply has not been able to convince one to do so.

Instead, Mr. Perdue and his campaign are coordinating their fundraising efforts with a non-profit corporation registered with the Commission as an

independent committee called Georgia Values Fund. *See supra* n.2. As stated in bold print on Georgia Values Fund's webpage, **"Your contribution will benefit David Perdue for Governor."** *Id.* Georgia Values Fund's webpage further asks donors to provide their mobile phone number to receive Perdue for Governor campaign alerts, updates and news. *Id.* And Georgia Values Fund's webpage even instructs donors to mail contributions directly to Mr. Perdue's campaign: "Mail: To contribute by mail, please send a personal check made payable to "Perdue for Governor, Inc." with Mr. Perdue's campaign address. *Id.* Mr. Perdue's ongoing coordination with Georgia Values Fund belie his cries of unfairness.

## ARGUMENT AND CITATION TO AUTHORITY

Georgians First joins in State Defendants' Response Brief, filed on January 18, 2022, in its entirety and adopts the arguments set forth therein. Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits because they have not shown that S.B. 221 restrains Plaintiffs' speech or expression in any way. Plaintiffs are fully capable of fundraising and making expenditures—indeed, Perdue for Governor can even accept and solicit contributions during a critical time when Kemp for Governor is prohibited from doing so. *See* O.C.G.A. § 21-5-35. Any limits on those abilities is imposed by a law which Plaintiffs do not challenge. Plaintiffs' equal protection claim likewise fails because, if anything, S.B. 221 *reduces* the

disparate treatment *of incumbents* because challengers—like Mr. Perdue—can fund-raise during the legislative session.

In light of Georgians First's adoption of the State Defendants' Response Brief, this brief seeks to minimize repeating arguments already before the Court and instead focuses on additional considerations to aid in the Court's analysis.

## I.    *Davis* is inapposite.

Mr. Perdue relies heavily on *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008), for the idea that the Supreme Court "has never upheld the constitutionality of a law that imposes different contribution limits for candidates competing against each other[.]" But in *New York Republican State Committee v. SEC*, 927 F.3d 499 (D.C. Cir. 2019), the D.C. Circuit helped to explain why *Davis* is inapposite.

In that case, the plaintiffs challenged an SEC rule regulating political contributions by certain members of the financial industry. *Id.* at 501. The plaintiffs argued that the regulation violated the First Amendment because created "a disparate impact … on candidates running for the same seat." *Id.* at 511. The plaintiffs relied on *Davis* in support of their argument that "this disparity necessarily makes the regulation unconstitutional." *Id.*

The D.C. Circuit upheld the regulation, noting that the "operative question" in *Davis* "was not simply whether the challenged rule had a disparate effect, but

whether the difference was 'justified by the primary governmental interest proffered in its defense.'" *Id.* (quoting *Davis*, 554 U.S. at 738). The D.C. Circuit went on to explain that:

> Although the [Supreme] Court noted it has 'never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other, the [Supreme] Court invalidated the law [in *Davis*] not because of the disparate effect upon the candidates, as the petitioners suggest, but because the Government's interest in 'level[ing] electoral opportunities for candidates of different personal wealth' is not a 'legitimate government objective.

*Id.* (citations omitted).

These passages help to highlight why *Davis* is inapposite to S.B. 221. As an initial matter, S.B. 221 does not create a First Amendment impact on Mr. Perdue. S.B. 221 does not change contribution limits for anyone; indeed, Governor Kemp is subject to the same contribution limits as Mr. Perdue. Nor is Georgians First simply Governor Kemp's alter ego. Though Governor Kemp is its Chairman, Georgians First has its own Board and Executive Director. It has plans to spend funds in support of other candidates. S.B. 221 does not restrict Mr. Perdue from similarly coordinating expenditures with any leadership committee—he simply has not been able to find any leadership committee to support him. This may be evidence of a lack of support for him, but it is not a reason to invalidate a duly-enacted statute.

But even so, the contribution limits on candidates and the creation of leadership committees both serve a important governmental interest: preventing the "appearance of corruption." *McCutcheon*, 572 U.S. at 191. As Defendants explained in their opposition to Plaintiffs' Motion, the prohibition on fundraising during the legislative session created powerful incentives for donors to give money to outside groups in a way that was "designed to avoid triggering even barebones disclosure obligations." This regime created a substantial risk of the appearance of corruption to the public, undermining their confidence in the government. By enacting S.B. 221, the Legislature created a safety valve for those dollars to be brought back into accounts that were subject to public disclosure laws, thereby increasing transparency and reducing the appearance of corruption. Thus, unlike the statute at issue in *Davis*, S.B. 221 serves an important governmental interest and should be upheld.

## II.   The balance of the equities and the public interest do not clearly favor Plaintiffs.

Preliminary injunctions are never entered as a matter of right, even if a plaintiff can show substantial likelihood of success on the merits. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018). Instead, when considering whether to grant a preliminary injunction, the Court must consider the balance of the equities carefully. *Winter*, 555 U.S. at 26. Setting aside Plaintiffs' failure to otherwise clearly meet their burden, their Motion is still due to be denied because the balance of equities tilts decidedly

against them.

Mr. Perdue's lawsuit is nothing but a bare attempt to hamstring support for his political opponent's campaign just months before an election. As Plaintiffs well knows, as a statewide elected official, Governor Kemp is prohibited from fundraising during the legislative session. O.C.G.A. § 21-5-35. Mr. Perdue, by contrast, is not restricted from fundraising during this time. With the primary election fast approaching on May 24, 2022, Mr. Perdue significantly benefits by keeping his political opponent's campaign on the sideline for the next three months. Accordingly, he instituted this suit to try and prevent a major supporter of Governor Kemp—Georgians First—from fundraising and spending money during that time as well, cementing his structural advantage. Thus, granting an injunction would only serve to further tip the balance in *Mr. Perdue's* favor.

As if this was not enough, Mr. Perdue and his campaign's coordination with Georgia Values Fund warrants denial of their motion under the equitable doctrine of unclean hands. The active coordination with Georgia Values Fund is clear from its website:

Please provide your mobile phone to opt-in to Perdue for Governor campaign alerts, updates and news. By providing your phone number, you are consenting to receive calls and texts, including automated calls and texts, to that number. You will receive messages from 47682. You will receive a confirmation text from 47682. Please reply Y to confirm your opt-in. Message frequency may vary. Msg&Data Rates May Apply. Reply GASTOP to cancel. Reply GAHELP for help.

Contributions are not tax deductible. Contributions are limited to $7,600 for the 2022 Primary Election, $7,600 for the 2022 General Election and $4,500 for the potential Primary and General Runoff Election for a total of $24,200. State law requires us to collect and report the name, address, occupation and employer of individuals whose contributions exceed $100 per election cycle.

Mail: To contribute by mail, please send a personal check made payable to "Perdue for Governor, Inc." to:

Perdue for Governor, Inc.

P.O. Box 12077

Atlanta, GA 30355

Please include your full name, address, email address, occupation and employer in the envelope.

Paid for by Georgia Values Fund.

*See supra* n.2. Georgia Values Fund paid for the entire communication while also soliciting donor information and contributions to Perdue for Governor.

Plaintiffs' claim that the "ability to circumvent the contribution limits imposed by the Act grants Governor Kemp and his campaign a massive structural advantage," Doc. 1 at 38, but Plaintiffs themselves are circumventing the contribution limits through their unlawful coordination with Georgia Values Fund. "Application of the equitable doctrine of unclean hands lies within the sound discretion of the district court." *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983) (citing *Wolf v. Frank*, 477 F.2d 467, 474 (5th Cir. 1973).

Moreover, an injunction would harm Georgians First by potentially creating practical and legal implications that reach far beyond the parties to this lawsuit.

Georgians First has several existing contracts with vendors for services. In any campaign, contracts may be entered for services that will be provided over many months leading up to an election, and the payment terms may be spread out over time. If the relief requested by Plaintiffs is granted, it could very well lead to contract disputes over payments already made and payments that are not yet due.

For all of these reasons, equity is not in favor of an injunction, and the Court should deny the Motion.

### III.    Plaintiffs' preferred remedy is inappropriate and overbroad.

Even if the Court were to find that an injunction was warranted, Plaintiffs' proposed injunction is far too broad and is untethered to the alleged harm. "The fundamental principle of equity guiding the court at [the tailoring] stage is that 'injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties.'" *Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021) (quoting *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013)). "In the case of a constitutional violation, injunctive relief must be tailored to fit the nature and extent of the established violation. In other words, the injunction must be *no broader than necessary to remedy the constitutional violation*. When a district court fails to follow this principle and drafts an unnecessarily broad injunction, the district court abuses its discretion." *Id.* (citations and quotations omitted, emphasis added).

– 14 –

Here, the purported constitutional harm is restricted only to Mr. Perdue. Mr. Perdue's fundamental complaint is that he is subject to campaign contributions while Governor Kemp, by virtue of his position as Chairman of Georgians First, is not. As discussed above and in the Defendants' response brief, that is not true. But even if it were, the most appropriate injunction would be one which eliminates this disparity in the context of the primary contest between Governor Kemp and Mr. Perdue. Instead, Plaintiffs seek to obliterate the entire concept of a gubernatorial leadership committee and the very existence of Georgians First. But there are numerous other legitimate uses for gubernatorial leadership committees, including Georgians First. For example, Georgians First has plans to spend funds in support of other candidates. Doing so has absolutely zero relation to Mr. Perdue's campaign speech. Moreover, after the primary, Georgians First would be in a position to continue supporting Governor Kemp's candidacy in the general election.

Should the Court grant any relief (which we do not think it should), there is simply no need to use the sledgehammer of Plaintiffs' proposed injunction to crack the nut of their alleged constitutional violations. Indeed, Plaintiffs' proposed injunction would potentially impose significant liability on Georgians First, which has already incurred numerous contractual commitments. At most, if the Court restricts the use of a leadership committee for the primary election, the Court should only

issue an injunction prohibiting Georgians First from spending more than the contribution limit of $7,600 (or $4,500 for any primary runoff) from any one donor on the primary contest between Governor Kemp and Perdue.

Mr. Perdue should be in favor of such a limited remedy because it addresses the supposed harm that he alleges. Or alternatively, one could expect that Mr. Perdue might seek to have Court *expand* the law so that he could himself chair a leadership committee. The fact that Mr. Perdue does not and would instead have this Court adopt such a broadly restrictive remedy as he seeks in his Complaint is just further evidence that Mr. Perdue's true goal in this litigation is not to remedy a constitutional violation, but rather to frustrate and fetter his opposition.

## CONCLUSION

For the reasons stated above, as well as those stated in the State's opposition brief, the Court should deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 29th day of January, 2022,

*/s/ Vincent F. Russo*
Vincent F. Russo (GA Bar 242628)
Edward A. Bedard (GA Bar 926148)
Carey A. Miller (GA Bar 976240)
ROBBINS ROSS ALLOY
    BELINFANTE LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
T:  (678) 701-9381
F:  (404) 856-3255

E:  vrusso@robbinsfirm.com
ebedard@robbinsfirm.com
cmiller@robbinsfirm.com

*Counsel for Amicus Curiae Georgians
First Leadership Committee, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, I hereby certify that this motion has been pre-pared in Times New Roman, 14-point font, one of the font and point selections ap-proved by this Court in Local Rule 5.1C.

This 29th day of January, 2022.

*/s/ Vincent F. Russo*
Vincent F. Russo (GA Bar 242628)

ROBBINS ROSS ALLOY
    BELINFANTE LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com

*Counsel for Amicus Curiae Georgians*
*First Leadership Committee, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 29th day of January, 2022.

*/s/ Vincent F. Russo*
Vincent F. Russo (GA Bar 242628)

ROBBINS ROSS ALLOY
    BELINFANTE LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
T: (678) 701-9381
F: (404) 856-3255
E: vrusso@robbinsfirm.com

*Counsel for Amicus Curiae Georgians*
*First Leadership Committee, Inc.*