# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **David Perdue; and Perdue for Governor, Inc.,**<br><br>          **Plaintiffs,**<br><br>  **v.**<br><br>**Brian Kemp, in his personal capacity and in his official capacity as the Governor of Georgia; Christopher M. Carr, in his official capacity as the Attorney General of Georgia; James D. Kreyenbuhl, in his official capacity as Chairman of the Georgia Government Transparency and Campaign Finance Commission; Eric L. Barnum, in his official capacity as Vice Chair of the Georgia Government Transparency and Campaign Finance Commission; Robert A. Watts, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; Darryl Hicks, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; Rick Thompson, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; and Georgians First Leadership Committee, Inc.,**<br><br>          **Defendants.** | Case No.  1:22-CV-53<br><br>**<u>AMENDED VERIFIED COMPLAINT</u>**<br><br>**DECLARATORY AND INJUNCTIVE RELIEF SOUGHT** |

Plaintiffs former United States Senator David Perdue and Perdue for Governor, Inc. (collectively, "Senator Perdue"), by counsel, respectfully seek declaratory and injunctive relief on an expedited basis in order to protect Senator Perdue's constitutional rights from an uneven and discriminatory campaign finance statute that grants special fundraising and expenditure privileges to the incumbent governor running for re-election while denying those privileges to Senator Perdue.

The U.S. Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis v. FEC*, 554 U.S. 724, 738 (2008). Georgia ignored this fundamental and bright-line standard by enacting Senate Bill 221, which allows the incumbent governor—and no other gubernatorial primary candidate—to chair a "leadership committee" to which Georgia campaign contribution limits do not apply. A motion for a preliminary injunction has been filed with the Court.

## **INTRODUCTION**

1.     The U.S. Supreme Court has made clear that "the unprecedented step of imposing different contribution . . . limits on candidates vying for the same seat is antithetical to the First Amendment." *Davis*, 554 U.S. at 743–44.

2.     Georgia Senate Bill 221, codified at O.C.G.A. § 21-5-34.2 (hereinafter the "Amendment"), does exactly that by amending the Georgia Government

Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1, *et seq.* (the "Act"), to create a new type of campaign finance entity available only to certain incumbents that is not subject to the Act's general campaign finance regime.

3.      The Act generally provides that a candidate and the candidate's campaign committee may accept contributions in limited amounts.   Currently, statewide candidates and their campaign committees may accept aggregate contributions from any entity that do not exceed $7,600 for the primary election and $4,500 for the primary runoff election.  *Id.* § 21-5-41(a).[1]

4.      The Amendment authorizes certain incumbent candidates—including the incumbent governor—to create an additional "leadership committee" which is exempt from the Act's contribution limits and may raise unlimited contributions.

5.      Leadership committees are also permitted to make expenditures without limit "for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate," and to "defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office." *Id.* § 21-5-34.2(d).   A leadership committee's expenditures in support of the

---

[1] As required by law, the limits have been adjusted from time to time to account for inflation, so the dollar amounts written into the Act do not reflect the current limits.

campaign committee of the leadership committee's chairperson are not subject to the limits otherwise imposed on in-kind contributions.

6.     As a result, the Amendment creates a de facto second campaign committee for Governor Kemp that disadvantages Senator Perdue.  Prior to the primary election, only the incumbent governor is permitted to create a leadership committee.  The incumbent thus has ***nearly three-and-a-half years*** to accept unlimited contributions and amass a political war chest before any other candidates in the incumbent's race are permitted to create their own leadership committee.  The incumbent can then use those unlimited funds to attack his or her challengers in the primary election and, if the incumbent becomes his or her political party's nominee, in the general election as well.

7.     And that is precisely what Governor Kemp has done.  Seven days after the Amendment became effective on July 1, 2021, Georgians First Leadership Committee, Inc. ("Georgians First") registered with the Georgia Government Transparency and Campaign Finance Commission (the "Commission") as a leadership committee with Governor Kemp as its chairperson.  Since that time, Georgians First has been permitted to raise unlimited contributions from donors.

8.     Senator Perdue declared his candidacy for the Republican gubernatorial primary on December 6, 2021, and Governor Kemp, who is running for re-election,

immediately began taking full advantage of the Amendment by using the funds raised by his leadership committee to attack Senator Perdue's candidacy with negative campaign ads.

9.      Unlike Governor Kemp, Senator Perdue remains bound by the campaign contribution limits in the Act and must respond to Governor Kemp's attacks within the confines of Georgia's traditional campaign finance regime.

10.      Enactment of the Amendment cannot be justified by any assertion that the Amendment increased Georgia's disclosure reporting requirements.  To the contrary, the Amendment simply applied the existing disclosure requirements to the new type of committee.  The fact that leadership committees are required to disclose their financial activity does not affect the basic constitutional infirmity inherent in the Amendment, which is that only one candidate in the gubernatorial race—the incumbent governor—can raise and use leadership committee funds prior to the party primaries.  Regardless of public disclosure, the Amendment nakedly benefits the incumbent Governor, at the expense of Senator Perdue, by creating an opportunity for the incumbent Governor to use unlimited contributions to benefit his candidacy and campaign committee and to flood the competitive market of electoral politics with his own message.

11.    The Amendment also cannot be justified on the grounds that it decreases the risk of quid pro quo corruption.  The only legitimate and compelling government interests identified by the Supreme Court for restricting campaign finances are preventing quid pro quo corruption or its appearance.  A law removing contribution limits for the incumbent Governor, regardless of who that person is, cannot be justified on the grounds that it is an anti-corruption measure.

12.    The Amendment infringes on Senator Perdue's constitutional rights by creating an uneven election playing field and, as a result, burdening Senator Perdue's First Amendment political speech rights and violating equal protection.  Georgia has created a system that inhibits robust and wide-open political debate by unconstitutionally advantaging the incumbent Governor over his primary challenger in their respective abilities to fundraise and engage in core political speech.

## PARTIES

13.    Plaintiff David Perdue is a candidate for Governor in 2022 and is seeking the Republican nomination.  From 2015 to 2021, Senator Perdue represented the people of Georgia in the United States Senate.  Senator Perdue resides in Sea Island, Georgia.

14.    Plaintiff Perdue for Governor, Inc. is a campaign committee as defined by the Act, *id.* § 21-5-3(2), and is headquartered in Atlanta, Georgia.  Perdue for

Governor, Inc. is the campaign committee of David Perdue in his campaign to become Governor of Georgia.

15.    Defendant Brian Kemp ("Governor Kemp") is the Governor of Georgia.  Under Georgia law, the Governor is Georgia's chief law enforcement officer, with the constitutional responsibility to "take care that the laws are faithfully executed."  Ga. Const. Art. V § 2.  Governor Kemp has announced his intention to seek re-election as Governor in the 2022 Georgia gubernatorial election, and he is the chairperson of Georgians First Leadership Committee, Inc.  Governor Kemp is being sued in both his personal and his official capacity.

16.    Defendant Christopher M. Carr ("Attorney General Carr") is the Attorney General of Georgia.  The Act provides that the Attorney General may bring actions to enforce violations of the Act.  *See* O.C.G.A. § 21-5-6(b)(14)(C).

17.    Defendant James D. Kreyenbuhl is the Chairman of the Commission.

18.    Defendant Eric L. Barnum is the Vice Chair of the Commission.

19.    Defendants Robert A. Watts, Darryl Hicks, and Rick Thompson are members of the Commission (collectively with Kreyenbhul and Barnum, the "Commission Defendants").

20.    In their roles as members of the Commission, the Commission Defendants are empowered and entrusted to enforce the Act.  *See generally id.* §§

21-5-6, 21-5-7, 21-5-36.  The Commission Defendants accomplish this goal by, *inter alia*, "institut[ing] and prosecut[ing] actions in the superior courts" in the name of the Commission and "seeking to enjoin or restrain any violation or threatened violation of [the Act]."  *Id.* § 21-5-6(a)(6).

21.    Defendant Georgians First Leadership Committee, Inc. ("Georgians First") is a leadership committee as defined by the Amendment, *id.* § 21-5-34.2(a), and it is headquartered in Atlanta, Georgia.

22.    Governor Kemp is the chairperson of Georgians First, as required by the Amendment.  *See id.* § 21-5-34.2(a).  Indeed, the Amendment provides that "the term 'leadership committee' means a committee . . . chaired by the Governor[.]"  *Id.* If Governor Kemp "ceases to hold the office" of "the Governor" then, pursuant to the Amendment, he cannot remain as the chairperson of Georgians First.  *Id.* § 21-5-34.2(a), (c).

23.    At all relevant times, Georgians First acted at the direction, under the control, and/or for the benefit of Governor Kemp.  Governor Kemp has *de jure* control of Georgians First under the organization's Certificate of Incorporation through his role as Chairman of the Board—as well as under the Amendment which states that he must be the chair—and he has *de facto* control as demonstrated by Georgians First's singular focus on the re-election of Governor Kemp.

24.    All Defendants, personally or through the conduct of their employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

25.    All Defendants are sued for declaratory and injunctive relief.  Attorney General Carr and the Commission Defendants are sued in their official capacity only.

## JURISDICTION AND VENUE

26.    This Court has subject-matter jurisdiction because this action arises under the laws and Constitution of the United States.   28 U.S.C. § 1331. Specifically, this action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to enforce and to enjoin violations of rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

27.    Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

28.    This Court has personal jurisdiction over Defendants, who are sued in their personal or official capacity and/or reside in Georgia.

29.    Venue is proper in this District because all Defendants reside in Georgia and because a substantial part of the events giving rise to Senator Perdue's claims occurred within this judicial District.  *See* 28 U.S.C. §§ 1391(b)(1), (2).

30.     Venue is proper in this Division because at least one of the named Defendants resides in this Division.  *See* N.D. Ga. Civ. L. R. 3.1(B)(1).

31.     Senator Perdue has standing because Senator Perdue has declared his candidacy in the 2022 Republican gubernatorial primary election and the Amendment's selective removal of campaign finance restrictions for the incumbent Governor specifically disadvantages Senator Perdue, who remains subject to statutory campaign contribution limitations during the primary election.

32.     As a result of the unequal contribution limits applied to gubernatorial primary candidates in the same race—which manifest in the incumbent Governor's ability to chair and control a leadership committee—Governor Kemp is able to expend substantially more funds than Senator Perdue, including raising funds in unlimited amounts to attack Senator Perdue.  Indeed, although Senator Perdue had been a gubernatorial candidate for less than a month when the Complaint was filed, Governor Kemp had already spent more than a million dollars on ads targeting Senator Perdue, in an effort to damage his reputation with voters in the primary election.

33.     Under Georgia's restrictions on campaign committee contributions for primary challengers, which require Senator Perdue to raise funds in amounts of no more than $7,600 for the primary and $4,500 for a potential primary runoff, Senator

Perdue must spend more time and resources raising money and ultimately cannot raise and spend as much money in the primary as the incumbent Governor Kemp. This undermines Senator Perdue's ability to spread his campaign message in the same manner as Governor Kemp and puts Senator Perdue at a significant competitive disadvantage in the Republican gubernatorial primary.

34.    Senator Perdue's injuries are caused by the unequal contribution limits created by the Amendment.  Governor Kemp's expenditures from his leadership committee as allowed by the Amendment promote his candidacy and benefit his campaign committee—including by attacking Senator Perdue—thereby harming Senator Perdue's candidacy.

35.    Senator Perdue's injuries will be redressed if the Court grants the relief requested.

## **FACTUAL ALLEGATIONS**

36.    Due to the First Amendment implications of campaign-finance regulations, such laws cannot be upheld unless they satisfy at least "exacting scrutiny." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021).  That is, a regulation limiting campaign contributions or expenditures must be "justified by a compelling state interest," *Davis*, 554 U.S. at 740 (citations omitted), and be

"narrowly tailored" to that interest, *Randall v. Sorrell*, 548 U.S. 230, 261 (2006); *see FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 261 (1986).

37.     In addition, Senator Perdue is entitled to equal protection under the law, especially where, as here, uneven and discriminatory treatment burdens his First Amendment rights in the throes of a hotly contested political campaign.  To justify such unequal treatment, a law must satisfy "greater scrutiny."   *See Riddle v. Hickenlooper*, 742 F.3d 922, 927 (10th Cir. 2014).

38.     The Amendment does not come close to satisfying any standard of review.

I.     GEORGIA'S GOVERNMENT TRANSPARENCY AND CAMPAIGN FINANCE ACT

39.     Apart from the leadership committees created by the Amendment, the Act applies equally to all gubernatorial candidates and their campaign committees. Specifically, the Act prohibits any statewide "candidate or campaign committee" from receiving contributions "in the aggregate" from any person exceeding $7,600 for the primary election and $4,500 for the primary runoff election.  O.C.G.A. § 21-5-41(a).[2]

---

[2] The statutory contribution limits are indexed for inflation.  *See* O.C.G.A. § 21-5-41(k).  On September 30, 2021, the Commission unanimously voted to increase the campaign contribution limits to $7,600 for the primary election and $4,500 for the primary run-off election.  *See Minutes of Commission Meeting* at 2, Ga. Gov't Transparency & Campaign Fin. Comm'n, Sept. 30, 2021, https://bit.ly/3HxFYGh.

40.   The Act provides that campaign contributions "shall be utilized only to defray ordinary and necessary expenses" of the campaign, *id.* § 21-5-33(a), which include "expenditures made during the reporting period for qualifying fees, office costs and rent, lodging, equipment, travel, advertising, postage, staff salaries, consultants, files storage, polling, special events, volunteers, reimbursements to volunteers, repayment of any loans received . . . , contributions to nonprofit organizations, flowers for special occasions, . . . [and] attorney fees connected to and in the furtherance of the campaign." *Id.* § 21-5-3(18).

## II.   THE AMENDMENT

41.   The Amendment undermines the even-handed campaign committee contribution regime established by the Act.  Specifically, the Amendment authorizes "the Governor"[3] to establish a "leadership committee" which "may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate[, and] may defray

---

[3] The Amendment also allows the chairing of leadership committees by the incumbent Lieutenant Governor, the nominee of a political party for Governor and Lieutenant Governor selected in a primary election, the majority and minority caucuses of the Georgia House of Representatives, and the majority and minority caucuses of the Georgia Senate.  O.C.G.A. § 21-5-34.2(a).  Because Senator Perdue is challenging Governor Kemp in the primary election, the Amendment does not permit Senator Perdue to establish a "leadership committee."  Senator Perdue is not challenging the Amendment with respect to leadership committees chaired by the majority and minority caucuses of the House of Representatives and Senate.

ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office . . . ."  *Id.* §§ 21-5-34.2(a), (d).

42.   The Amendment further provides that "the contribution limits [established in the Act] ***shall not apply to contributions to a leadership committee*** or ***expenditures made by a leadership committee in support of a candidate*** . . . ." *Id.* § 21-5-34.2(e) (emphasis added).

43.   A leadership committee not only may accept unlimited contributions, but it also may make unlimited expenditures benefitting the incumbent chairperson's candidacy, without such spending counting as a contribution to the incumbent candidate or his campaign committee.  *See id.* §§ 21-5-34.2(d), (f).

44.   No other candidate for Georgia's gubernatorial race—in a primary or the general election—may chair a leadership committee ***unless and until*** they win a political party's nomination in a primary election.  *Id.* § 21-5-34.2(a).

45.   Georgia's primary election is scheduled to take place on May 24, 2022; a primary runoff is scheduled to be held on June 21, 2022, if necessary.  Thus, as a result of the Amendment, Governor Kemp, as the incumbent Governor, can out-raise and out-spend his primary and general election challengers for months.  That is, Governor Kemp may chair a leadership committee—a de facto ***second*** campaign committee—raise funds from contributors in unlimited amounts, and use these

unlimited funds to make expenditures benefitting his candidacy and campaign committee before any other gubernatorial candidate is even eligible to chair a leadership committee.  Meanwhile, primary challengers like Senator Perdue—who is only allowed a single campaign committee—will ***never*** be able to raise and spend funds equally with Governor Kemp during the primary election.

## III.   GOVERNOR KEMP'S LEADERSHIP COMMITTEE ATTACK ADS

46.     Governor Kemp began taking advantage of this asymmetrical campaign finance regime immediately.  Governor Kemp registered his leadership committee— Georgians First—with the Commission on July 7, 2021, only a week after the Amendment became effective on July 1, 2021.  Ex. 1, Declaration of Taylor Brown ("Decl.") ¶ 16.  Georgians First began running advertisements targeting Senator Perdue on December 6, 2021, mere hours after Senator Perdue announced he was running for governor.  *Id.* ¶ 20.  As of the date that this matter was initiated, Governor Kemp and Georgians First have spent more than a million dollars specifically attacking Senator Perdue (who remains bound by the Act's campaign committee contribution limits) with negative advertisements on television, email, Google, and Facebook, and via mail:

a.  On or around December 6, 2021, Governor Kemp and Georgians First launched a fifteen-second ad targeting Senator Perdue, entitled

"Headlines."  *See* Georgians First Leadership Comm., *Headlines*, YouTube (Dec. 6, 2021), https://youtu.be/mrQkXV1dK1c.

b.  On or around December 7, 2021, Governor Kemp and Georgians First launched a thirty-five second ad targeting Senator Perdue, entitled "Perdue Lost."  *See* Georgians First Leadership Comm., *Perdue      Lost*,      YouTube      (Dec.      7,      2021), https://youtu.be/NZBA80_ipWk.

c.  On or around December 8, 2021, Governor Kemp and Georgians First launched a sixteen-second ad targeting Senator Perdue, entitled "Outsourcing."      *See*  Georgians  First  Leadership  Comm., *Outsourcing*,      YouTube      (Dec.      8,      2021), https://youtu.be/gkQaFPG948Q.

d.  On or around December 9, 2021, Governor Kemp and Georgians First launched a twelve-second ad targeting Senator Perdue, entitled "Run Another Campaign." *See* Georgians First Leadership Comm., *Run   Another   Campaign*,   YouTube   (Dec.   9,   2021), https://youtu.be/EXdFDxqGWUk.

e.   On or around December 10, 2021, Governor Kemp and Georgians First launched a fifteen-second ad targeting Senator Perdue, entitled

"Perdue Losing."  *See* Georgians First Leadership Comm., *Perdue Losing*, YouTube (Dec. 10, 2021), https://youtu.be/bUEqFnUnpKs.

f.   On or around December 13, 2021, Governor Kemp and Georgians First paid for an email advocating against the nomination of Senator Perdue (*see* Email Update, Georgians First Leadership Comm., https://bit.ly/34cjiNj (last visited Jan. 6, 2022)) stating, in relevant part, that "David Perdue would lose big to Stacey Abrams" and "will COST GEORGIANS EVERYTHING" if nominated.  The email includes a link to a video hosted on Georgians First's Facebook page targeting Senator Perdue.  *See* Georgians First Leadership Committee, *Hardworking Georgians cannot risk it all on former Senator Perdue to deliver a win over Stacey Abrams*, Facebook (Dec.                           13,                           2021), https://www.facebook.com/watch/?v=608365030378101.

g.   On or around December 14, 2021, Governor Kemp and Georgians First launched a thirty-one-second ad targeting Senator Perdue, entitled "America First."  *See* Georgians First Leadership Comm. *America       First*,       YouTube       (Dec.       14,       2021), https://youtu.be/BV592xYTBkE.

h.  Governor Kemp and Georgians First have purchased broadcast and cable air time for at least two separate television ads across the state for December 14, 2021, through January 3, 2022.  *See* Greg Bluestein, *Kemp's first anti-Perdue ad leverages a key campaign finance edge*, The Atlanta J.-Const. (Dec. 14, 2021), https://bit.ly/3FSUY18.

i.  Governor Kemp and Georgians First have launched a webpage targeting Senator Perdue, "formersenatordavidperdue.com."

j.  Governor Kemp and Georgians First have also launched a Twitter account that appears to be dedicated to promoting the candidacy of Governor Kemp and attacking the candidacy of Senator Perdue.  *See* @Georgians_First, Twitter, https://twitter.com/georgians_first (last visited Jan. 6, 2022).

k.  On or around December 21, 2021, Governor Kemp and Georgians First released a twenty-one-second ad on the Georgians First twitter account targeting Senator Perdue for "flip flopping."  *See* Status, @Georgians_First, Twitter, https://bit.ly/3JCA1cS (Dec. 21, 2021).

l.  On or around January 4, 2022, Governor Kemp and Georgians First paid for a direct mail advertisement stating, "Millionaire David

Perdue Got Rich Putting Himself First & Sending American Jobs to China" and caused that mail advertisement to be mailed to an unknown number of Georgia residents.

Decl. ¶¶ 21(a)–(l).

47. These and other advertisements state that they are "paid for by Georgians First Leadership Committee." *Id.* ¶ 22.

48. As a result of these ongoing fundraising operations and attack advertisements funded by Governor Kemp's leadership committee—which are being disseminated daily and which will continue to be disseminated throughout the primary election—Senator Perdue has been and will continue to be severely harmed and disadvantaged in the Georgia Republican primary election.  Governor Kemp is accepting unlimited contributions to his leadership committee, and he is using and will continue to use those funds to flood the competitive political market with advertisements attacking Senator Perdue and attempting to undermine his reputation among Georgia voters during the primary election.  Senator Perdue cannot fight back in kind because he is still bound by the Act's campaign contribution limits, and he must raise an untold amount in ***additional*** contributions before he can even begin to compete with Governor Kemp.

49.     Failing to respond to early negative advertisements can be particularly damaging for candidates like Senator Perdue, whose prior experience and government service is mischaracterized.  *Id.* ¶ 24.  Early misleading advertisements can influence the public's perception of a candidate challenging an incumbent, subverting public opinion before members of the public have had the opportunity to develop fully formed opinions of the candidate.  *Id.*  They also force the subject of the advertisements to determine whether to expend his or her limited early campaign resources on long-term investments designed to build a consistent donor base and campaign operation or fight back immediately against the negative narrative and image created by the attack advertisements.  *Id.* ¶ 25.  Governor Kemp and Georgians First are spared this dilemma by the massive fundraising and operational advantages the leadership committee provides to incumbent Governors.

### FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
**(First and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983)**

50.     Senator Perdue incorporates herein by reference paragraphs 1 through 49 above.

51.     The First Amendment, as applied to the states by the Fourteenth Amendment and enforced by 42 U.S.C. § 1983, guarantees protection of the freedom of association and the freedom of speech.  Included within these protections is the right to participate freely in political activities, without the imposition of unequal

campaign finance regulations that favor one candidate over others.  *See Davis*, 554 U.S. at 737; *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 736–40 (2011).

52.    Georgia has long placed limitations on the amount of money that a person may contribute to a candidate or campaign committee.  *See* O.C.G.A. § 21-5-41(a)-(b).  Prior to this year, these contribution limits applied equally to each candidate or campaign committee, regardless of incumbency.

53.    The Amendment changes these even-handed campaign finance rules for the incumbent Governor.  The Amendment grants to the incumbent Governor the ability to chair a leadership committee, which may accept ***unlimited*** contributions and make unlimited expenditures, and which functions as an effective second campaign committee.  *Id.* § 21-5-34.2(e).  All other gubernatorial candidates have only a single campaign committee, which is bound by the statutory contribution limits, and may not chair a leadership committee unless and until they ***win*** the primary election and secure the nomination of a political party.

54.    As a result, the incumbent Governor enjoys the right to accept contributions—and ultimately spend them—in larger amounts than any other gubernatorial candidate in the 2022 Georgia primary election.  Senator Perdue, and other non-incumbent candidates, must seek and obtain an untold number of

additional unique, unaggregated campaign contributions, substantially undermining any chance that they can obtain and expend the same amount of money as Governor Kemp.

55.     The Amendment ensures that for purposes of the gubernatorial primary, Senator Perdue will ***never*** be able to establish a leadership committee and be able to compete on an equal fundraising and campaign spending footing with Governor Kemp.  That is, Senator Perdue will not have the opportunity to promote his message and exercise his First Amendment rights to the same extent as Governor Kemp in the primary election.

56.     The Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other,"  and the "unprecedented step of imposing different contribution . . . limits on candidates vying for the same seat is antithetical to the First Amendment." *Davis*, 554 U.S. at 738, 743–44.

57.     Accordingly, by removing any limitation on the campaign contributions that the incumbent Governor may accept, while maintaining the contribution limits for all other gubernatorial primary candidates, the Amendment violates Senator Perdue's First Amendment rights to free speech and free association.

58.     The Amendment's differential contribution limits further create an uneven and discriminatory campaign finance regime that, on its face, requires Senator Perdue to expend additional effort to seek and obtain additional unique and unaggregated campaign contributions, and causes Senator Perdue to expend limited funds and resources in an attempt to counteract Governor Kemp's effectively unlimited campaign speech.

59.     The increased contribution allowance for leadership committees—which is only available to incumbent gubernatorial candidates in a primary election—serves only to benefit an incumbent Governor running for re-election and serves no compelling, important, substantial, or legitimate state interest that justifies the burden placed by the Amendment on the free exercise of First Amendment rights. Nor is such patent discrimination an appropriately tailored means of advancing any legitimate state interest.

60.     Senator Perdue has directly suffered, will continue to suffer, and is imminently threatened with suffering irreparable injuries to his freedom of speech and association under the First and Fourteenth Amendments of the U.S. Constitution by virtue of the Amendment's differential contribution limits.

## SECOND CLAIM FOR RELIEF
**(Fourteenth Amendment, as enforced by 42 U.S.C. § 1983 – Equal Protection)**

61.     Senator Perdue incorporates herein by reference paragraphs 1 through 60 above.

62.     Under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, Senator Perdue has the right to enjoy the equal protection of the law, especially where, as here, unequal treatment under the law burdens the exercise of the fundamental right to free speech under the First Amendment.

63.     An incumbent candidate and challenger candidates are similarly situated as candidates for governor.  Yet, the Amendment treats the incumbent candidate unequally with respect to contribution limits, based solely on his or her status as an incumbent.

64.     This unequal treatment gives incumbent gubernatorial candidates a significant competitive advantage over other candidates running in the same election.  There is no compelling, important, substantial, or legitimate state interest that justifies such patent discrimination against challenger candidates.

65.     There is no compelling, important, substantial, or legitimate state interest that justifies the Amendment's discriminatory distribution of benefits and disadvantages based solely on a candidate's status as an incumbent or a challenger.

Nor is such discrimination a least restrictive, narrowly tailored, direct, proportionate, or rational means of advancing any legitimate state interest.

66.     The Amendment's uneven and discriminatory contribution limits, facially and as applied, violates Senator Perdue's right to equal protection of the law under the Fourteenth Amendment and 42 U.S.C. § 1983.

67.     Senator Perdue has directly suffered, will continue to suffer, or is imminently threatened with suffering irreparable injury to his rights by virtue of the Amendment's differential contribution limits.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Senator Perdue respectfully requests that this Court enter judgment in his favor and against Defendants, as follows:

A.     Declare that the Amendment is unconstitutional on its face, and as applied to leadership committees chaired by the incumbent Governor of Georgia;

B.     Preliminarily and permanently enjoin any gubernatorial leadership committee established under the Amendment, including Georgians First, from making expenditures supporting the election of the person that chairs the committee;

C.      Preliminarily and permanently enjoin Governor Kemp and Georgians First from making expenditures of leadership committee funds "for the purpose of affecting the outcome of [the] election" between Governor Kemp and Senator Perdue, including by enjoining Governor Kemp and Georgians First from making expenditures of leadership committee funds for advertisements or other communications that depict or reference Governor Kemp or Senator Perdue, (*see* O.C.G.A. § 21-5-34.2(f));

1.      With respect to expenditures that have already been made for the placement of advertising and communications (such as purchases for television "air time" where the spots have not yet run), specify that Governor Kemp and Georgians First are prohibited from using the already purchased placements for advertisements or communications that depict or reference Governor Kemp or Senator Perdue unless those depictions or references are expressly required by an existing contract;

D.      Preliminarily and permanently enjoin Governor Kemp and Georgians First from making expenditures of leadership committee funds "for the

purpose of . . . advocating for the election" of Governor Kemp "or defeat" of Senator Perdue, (*see* O.C.G.A. § 21-5-34.2(f));

E.  Preliminarily and permanently enjoin Governor Kemp and Georgians First from making expenditures of leadership committee funds to "defray ordinary and necessary expenses incurred in connection with [Governor Kemp's] campaign for elective office," (*see* O.C.G.A. § 21-5-34.2(f));

F.  Preliminarily and permanently enjoin Governor Kemp and Georgians First from making expenditures of leadership committee funds to "defray ordinary and necessary expenses incurred in connection with [Governor Kemp's] fulfillment or retention of [his] office," (*see* O.C.G.A. § 21-5-34.2(f));

G.  Order the Commission to prohibit Georgians First from making expenditures of leadership committee funds for the purpose of affecting the outcome of the election between Governor Kemp and Senator Perdue;

H.  Award Senator Perdue his allowable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 or any other basis in law, as appropriate; and

I.   Grant such further and additional relief as this Court deems just and proper.

February 1, 2022

WILEY REIN LLP
Michael Toner
(*pro hac vice*)
Brandis L. Zehr
(*pro hac vice*)
Stephen J. Obermeier
(*pro hac vice*)
Jeremy J. Broggi
(*pro hac vice*)
Krystal B. Swendsboe
(*pro hac vice*)
2050 M Street, NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049

By:   /s/ Douglas Chalmers, Jr.
CHALMERS & ADAMS LLC
Douglas Chalmers, Jr. (GA Bar #118742)
Heather Wagner (GA Bar # 962353)
5805 State Bridge Road #G77
Johns Creek, GA 30097
Phone: (770) 630-5927
Fax: (866) 716-6089

*Counsel for Plaintiffs*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury

that the facts contained in the foregoing Amended Verified Complaint are true and

correct to the best of my belief and knowledge.

Taylor Brown
Campaign Manager, Perdue for Governor, Inc.

2/1/2022
Date

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2022, I electronically filed Plaintiffs' Amended Verified Complaint with the Clerk of Court for the United States District Court for the Northern District of Georgia, Atlanta Division, using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

H. Christopher Bartolomucci,
Annika M. Boone,
Brian Field,
Erik Scott Jaffe,
Loree Anne Paradise,
Gene C. Schaerr,
Jason Brett Torchinsky, and
Elizabeth Marie Wilson Vaughan
Vincent R. Russo, Jr.

I hereby further certify that I have caused said document to be made by personal service on Defendant Brian Kemp in his personal capacity and to be mailed by the United States Postal Service.

/s/ Douglas Chalmers, Jr.
Douglas Chalmers, Jr.
Georgia Bar No. 18742
Heather Wagner
Georgia Bar No. 96235
Attorneys for David Perdue and Perdue for Governor, Inc.

CHALMERS & ADAMS LLC
5805 State Bridge Road #G77
Johns Creek, GA 30097
Phone: (770) 630-5927
Fax: (866) 716-6089
Email:  dchalmers@chalmersadams.com